

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

This has been made good again by Acts 58th Leg., 1963, p 1256 Ch, 481 Sec. 1

5.

Honorable J. M. Williams
County Auditor
Tarrant County
Fort Worth, Texas

Dear Sir:

Opinion No. O-4112
Re: In carrying out the duty imposed upon the court under Art. 7212 as outlined, can the expenses thereby incurred be paid out of the different tax funds in the proportion as the tax rate of each fund bears to the total tax rate for the county?

Your letter requesting an opinion of this department on the above stated question reads in part as follows:

"Under the provisions of Article 7212, Revised Civil Statutes for 1925, the County Commissioners' Court has the duty 'To call before it such persons as in its judgment may know the market value or true value of such property, as the case may be, by proper process, who shall testify under oath the character, quality and quantity of such property, as well as the value thereof,'. This duty is incident to the duty of Commissioners' Courts and Boards of Equalization to supervise the assessment of property for taxation. To carry out the duties prescribed under the above statute necessarily incurs a certain amount of expense, and if properly done in many instances, the expense would be considerable.

"It has been a well settled course of procedure for many years for the Assessor-Collector to pay his commission for assessing and collecting taxes out of the different funds of the County affected, in the same proportion as the tax rates of each fund bears to the total tax rate for the County.

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

"In view of the above, we ask this question:

"'In carrying out the duty imposed' upon the Court under Article 7212, as above pointed out, can the expenses thereby incurred be paid out of the different tax funds in the proportion as the tax rate of each fund bears to the total tax rate for the County?

". . . ."

As to the valuation of rendered property, Article 7185, Vernon's Annotated Civil Statutes, provides in part:

"If the assessor is satisfied with the valuation as rendered * * *, he shall so enter the same; if he is not satisfied with the valuation, he shall refer the same to the Board of Equalization of the County for their action, and shall immediately notify the person from whom he received said list that he has referred said valuation to the Board of Equalization."

Article 7206, Vernon's Annotated Civil Statutes provides in part:

"Each Commissioners' Court shall convene and sit as a Board of Equalization on the second Monday in May of each year, or as soon thereafter as practicable before the first day of June, to receive all the assessment lists or books of the assessors of their Counties for inspection, correction or equalization and approval.

"1. They shall cause the assessor to bring before them at such meeting all said assessment lists, books, etc., for inspection, and see that every person has rendered his property at a fair market value, and shall have power to send for persons, books and papers, swear and qualify persons, to ascertain the value of such property, and to lower or raise the value of the same.

". . . ."

Article 7211, Vernon's Annotated Civil Statutes, provides in effect that in listing property, the assessor shall state his valuation if he considers that the owner has undervalued. Furthermore, Article 7212, Vernon's Annotated Civil Statutes, gives to the Board of Equalization a general power of supervising assessments and "if satisfied that the valuation of any property is not in accordance with the laws of the state, to increase or diminish the same and to fix a proper valuation thereto, as provided for in the preceding article." Referring to these provisions it was stated in the case of Republic Inc. Company vs. Highland Park Independent School District (57 S. W. (2) 627, error dismissed) that "the plain import and meaning of these statutory provisions is, that when an owner tenders to the assessor a listing and valuation of his property for taxation it is the duty of the assessor to receive the same, and in case of difference of opinion between them as to the valuations placed upon the property by the owner, the assessor's duty then is to refer the matter to the Commissioners' Court as a Board of Equalization, and the Court, after notice to the owner, is to hear evidence, settle and fix the disputed valuation."

From the facts stated in your letter, we assume, that you desire our opinion as to whether or not money may be taken from the various funds of the county including all the constitutional funds to pay such persons who shall testify under oath concerning the character, quality and quantity of such property, as well as the value thereof under the provisions of Article 7212, supra. It is to be noted in the first place that the Commissioners' Court has no authority aside from that granted to it by the Constitution, or Legislature. As stated by the Supreme Court of Texas in the case of Commissioners' Court of Madison County vs. Wallace, 15 S. W. (2) 535:

"* * * As said by the Court of Civil Appeals in its opinion: the Commissioners' Court is a creature of the State Constitution and its powers are limited and controlled by the Constitution and the laws as passed by the Legislature."

It is to be noted that in the case of Roper vs. Hall, 280 S. W. 289, the contract about which the case was concerned, called for the payment of the firm of tax engineers by warrants drawn on the general fund of the county. The

Honorable J. M. Williams, Page 4

Court does not discuss the question of whether or not the engineers could have been paid with warrants drawn on some of the constitutional funds of the County.

The outstanding authority on the proposition of the purposes for which the constitutional funds may be expended by the Commissioners' Court is the case of Carroll vs. Williams, 202 S. W. 504, Supreme Court of Texas. In this case, the Supreme Court specifically held that the money collected for the various constitutional funds could not be spent for any other purpose than the purpose for which such fund was set up by the Constitution.

The case of Wyatt vs. McGill, County Judge, et al, 114 S. W. (2) 860, among other things, holds that the Commissioners' Court may validly employ "skilled experts" to value for taxation purposes property in special instances, where technical equipment is required.

In Opinion No. O-1612, this department held that the County Commissioners' Court had authority to employ tax engineers to represent the Commissioners' Court in arriving at various oil valuations in Polk County. And that such contract was not analogous to the contract for the collection for delinquent taxes.

The case of Marquart, et al vs. Harris County, et al, 117 S. W. (2) 494, holds that a contract whereby a county employs skilled experts to discover and place on rolls for taxation property which has theretofore escaped taxation was a contract "in connection with collection of delinquent taxes" and within the statute requiring such contracts to be approved by the Comptroller of Public Accounts and Attorney General of the State of Texas and was void without such approval. This case further holds that the participation of the Comptroller was an indispensable requirement for the validity of the contract whereby skilled experts agreed to search for, survey, identify the owners of, and make an appraisal of all the taxable personalty in a county showing the value of such property as of January 1, 1938, and to complete a land and building valuation survey for the entire county and file the complete report of such land and buildings and the values for the use of the Board of Equalization and the Tax Assessor and Collector.

It is further stated in Opinion No. O-1612, supra, "that the Commissioners' Court is unauthorized to pay the firm of tax engineers involved to assist said Court in evaluation of oil properties in the county out of any of the various

constitutional funds of said county.  There is no authority
for the payment of such money out of any fund except the
general fund."

In view of the foregoing authorities and the facts
stated in your letter, we respectively answer the above stated
question in the negative.

Trusting that the foregoing fully answers your in-
quiry, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

Ardell Williams
Assistant

AW:mp



APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN